SCUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

ALICIA GANNON,

                    Plaintiff,              05 Civ. 2160 (JGK)

          - against -                       OPINION AND ORDER

AETNA LIFE INSURANCE CO.,

                    Defendant.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

        This is an action arising from an alleged wrongful denial
of long-term disability benefits under an employee benefits plan
subject to the requirements of the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et al.
Although originally filed against Aetna Life Insurance Company
("Aetna"), Conde Nast Publications Inc. Long-term Disability
Plan, and Conde Nast Publications, Inc., the parties have
stipulated that only Aetna remains a defendant. (See Order dated
July 11, 2007.) The defendant has filed a motion for summary
judgment. The plaintiff has filed a cross-motion for judgment on
the administrative record, which for the reasons explained below
the Court construes as a motion for summary judgment.

                              I.

        Unless otherwise noted, the following facts are not in
dispute. The plaintiff Alicia Gannon ("Gannon" or "plaintiff")
began working for Advanced Magazine Publishers, a subsidiary of

Conde Nast, as a senior graphic designer in September 2002. In November and December 2002 Gannon underwent radiological testing which determined that she had a meningioma (brain tumor) affixed to her right optical nerve. She stopped working at Conde Nast on April 25, 2003. (See Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stmt") ¶¶1-2; Plaintiff's Response to Defendant's 56.1 Statement Pursuant to Local Rule 56.1 ("Pl.'s Resp. 56.1 Stmt.") ¶¶1-2.)

Gannon's employer, Conde Nast, sponsored an employee welfare benefit plan governed by ERISA, and fully insured by Aetna ("the Plan"). (See Def.'s 56.1 Stmt. ¶¶4-6; Pl.'s Resp. Stmt. ¶¶4-6.) Employees of Conde Nast such as Gannon who are part of a defined eligible class under the Plan are entitled to long-term disability benefits pursuant to the terms and conditions of the Plan. (Id.; Affadavit of Kazuyuki Takashima dated September 20, 2005 ("Takashima Aff."), Ex. A at AG 00011.) The Plan provides for an elimination or waiting period of twenty-six weeks before long-term disability benefits are payable (Takashima Aff., Ex. A. at AG 00003), and defines a total disability during the first twenty-four months of the covered period as follows:

> [Y]ou are not able to perform the **material duties** of your **own occupation** solely because of: disease or **injury**; and your work earnings are 80% or less of your **adjusted predisability earnings**. After the first 24 months that any Month Benefit is payable during a period of disability you

> will be deemed to be disabled on any day if you are not
> able to work at any **reasonable occupation** solely because of
> disease; or **injury**.

(See Takashima Aff, Ex. A at AG 00012.)

A participant was entitled to a monthly long-term disability benefit of 60% of the participant's predisability monthly earnings. (See Def.'s 56.1 ¶11; Pl.'s 56.1 ¶11; Takashima Aff, Ex. A at AG 00003.) The Plan provides that Aetna, as the claim fiduciary under the Plan, has "discretionary authority" to "determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy." (See Def.'s 56.1 Stmt. ¶ 16; Pl.'s Resp. 56.1 Stmt. ¶ 16; Takashima Aff., Ex. A at AG 00066.) Additionally, the Plan specifies that "Aetna shall be deemed to have properly exercised such authority" and "must not abuse its discretion by acting arbitrarily and capriciously." (Takashima Aff., Ex. A at AG 00066.)

Gannon received short-term disability benefits under the Plan from on or about May 5, 2003 until November 2, 2003. (See Def.'s 56.1 Stmt. ¶ 8; Pl.'s Resp. 56.1 Stmt. ¶ 8.) Gannon underwent radiation therapy from June 12 to July 25, 2003 for her meningioma (AG 00290)[1], which led to the improvement of her visual distortions, headaches and fatigue. Also, from May

---

[1] The Plan is attached as Exhibit A to the Takashima Affidavit and is marked AG 00001-AG 00080. The administrative record is Exhibit B to the Takashima Affadavit and is marked AG 00081-AG 00825.  Hereafter, all cites to the administrative record will follow the format "AG 00081" et seq.

through November 2003, Gannon received treatment from Dr. Peter Sass, a psychiatrist. (<u>See</u> AG 00398.)  On August 20, 2003, Dr. Sass prepared an AETNA Attending Physician Behavioral Health Statement ("APS") on Gannon's behalf. (<u>See</u> AG 00269-00270.) The statement noted that Gannon was experiencing a "major depressive episode", and that Gannon was "too severely depressed and anxious to be employed at any job at this time" and that she was "too severely depressed and anxious" to participate in vocational rehabilitation (job retraining) programs at the time. (<u>Id</u>.) Under tasks that the patient is "unable to perform", Dr. Sass checked "able to give supervision to others," "able to maintain attention and concentration," "able to maintain persistence to task," "able to interact with public/customers," and "able to direct, control or plan activities of others." (<u>Id</u>.) Dr. Sass noted marked limitations in other categories. Dr. Sass predicted that Gannon would be able to return to work on November 18, 2003. (<u>Id</u>.)

On November 17, 2003, Dr. Sass prepared a second APS (<u>See</u> AG 00405-406.) In it, he again noted that the plaintiff was "too severely depressed to return to work." He further added that she had "significant depression with anhedionia on mental status examination," and predicted that she would be ready to work again on December 18, 2003. (AG 00405.)

The record also contains handwritten notes on a form entitled "progress notes" dated November 25, 2003, where Dr. Sass notes that Gannon "reports continuing to having (sic) difficulties returning to work as a graphic artist," and that her "[d]epressive [symptoms] are mildly improved," and that she was "dysthmic on exam." (AG 00521.)

Gannon became potentially eligible for long-term disability benefits on November 3, 2003, the date on which the Plan's 26-week "elimination period" expired. (See Takashima Aff., Ex. A at AG 00003; see also AG 00329.) On November 17, 2003, Gannon submitted the necessary forms and documentation under the Plan for long-term benefits based on the diagnosis of right optic meningioma and severe depression.[2] (See AG 00428-00458.) Her employer submitted a Physical Demand Analysis Worksheet on November 24, 2003 detailing the physical capabilities required by Gannon to perform the material duties of her job. (See Def.'s 56.1 Stmt. ¶ 19; Pl.'s Resp. 56.1 Stmt. ¶ 19; AG 00460.) The worksheet detailed that Gannon's position requires 90% computer use, 80% of day working alone and 20% working with others, frequent hand grasping and fine/gross manipulation; repetition; frequent sitting, standing, walking; occasional stair climbing, kneeling, lifting, pulling, pushing, reaching, bending,

---

[2] As conceded at oral argument, the plaintiff is no longer asserting she is entitled to long-term disability benefits on the basis of meningioma.  See Hr'g Tr. 3, Sept. 12, 2007.

carrying, twisting; occupational requirements included near and far vision, hearing, speaking and depth perceptions. (See Def.'s 56.1 Stmt. ¶ 20; Pl.'s Resp. 56.1 Stmt. ¶ 20; AG 00460.)

On January 22, 2004, AETNA wrote to Gannon that it was still evaluating her claim for long-term disability benefits under the Plan. (See Def.'s 56.1 Stmt. ¶ 21; Pl.'s Resp. 56.1 Stmt. ¶ 21; AG 00329.) The defendant claims that Gannon's medical and claim file was reviewed by Aetna's in-house Nurse Consultant, Karen M. Whitcher, R.N. in February 2004, who concluded that following Gannon's radiation therapy in August 2003, the problems with her vision had improved. (See Def.'s 56.1 Stmt. ¶¶ 22-23; AG 748-750.) Aetna's Psychology Consultant, Donna C. Wicher, Ph.D, reviewed Gannon's file in February 2004. (See Def.'s 56.1 Stmt. ¶ 24; Pl.'s Resp. 56.1 Stmt. ¶ 24; AG 00742-743.) Also in February 2004, Dr. Wicher spoke to Dr. Sass by telephone. (AG 00742-00743.) Dr. Wicher's notes from the conversation stated that Dr. Sass "has not seen Ms. Gannon for over three months and has no current information regarding her mental health status." (Id.) Dr. Wicher's report concluded by noting:

> There is no indication in the records received that Ms. Gannon is currently receiving any mental health treatment from other providers and no current mental health data is available to evaluate. Consequently, the information available does not support the conclusion that Ms. Gannon is currently experiencing impairment in functioning, such as impairment in grooming or hygiene, deficits in

concentration or memory (as tested by neuropsychological evaluation or mental status evaluation), or problems with psychomotor retardation or agitation, which is of a severity to preclude return to her usual job duties at this time. (Id.)

On March 5, 2004, Aetna denied Gannon's long-term disability claim by letter. (See AG 00324-00328.) The letter detailed the information that Aetna reviewed from the medical records that Gannon submitted on her disability claims of meningioma and depression. It concluded that Gannon was precluded from working because of the meningioma through September 1, 2003. (See AG 00326.) It then stated:

> Regarding your mental health difficulties, you were apparently able to communicate effectively in a written format as evidenced by your hand written letters you have submitted to us.  In addition, there is no indication in the records received that you are currently receiving any mental heath [sic] treatment from other providers and no current mental health date [sic] is available to evaluate. Consequently, the information available does not support the conclusion that you are currently experiencing impairment in functioning, such as impairment in grooming or hygiene, deficits in concentration or memory (as tested by neuropsychological evaluation or mental status evaluation), or problems with psychomotor retardation or agitation, which is of a severity to preclude return to your usual job duties at this time.

> Although you are reported to have meningioma and depression, the medical record in your file does not establish that these symptoms result in medical impairment that requires medical restrictions from performing work activities in your occupation as a graphic designer.  For the period after September 1, 2003, medical records do not demonstrate objective physical examination findings or mental status examinations that demonstrate cognitive impairment. (Id. at AG 00326.)

7

The letter went on to advise Gannon of her appeal rights under ERISA. (AG 00326-00328.)

On August 23, 2004, Gannon filed an administrative appeal with AETNA. (See AG 00398-00410.) In support of her appeal, Gannon's counsel attached to his letter to Aetna the APSs by Dr. Sass dated August 20, 2003 and November 17, 2003 and Dr. Sass's progress note dated November 25, 2003. (See AG 00403-00408.) The appeal argued that Aetna disregarded the applicable deadlines governing ERISA-controlled disability benefit determinations by taking five months to decide her claim instead of the required 45 days. (AG 00399.) Moreover, the appeal accused Aetna of taking advantage of its own delay because it focused on the lack of current medical records supporting Gannon's claims of mental health impairments as a basis to deny her claim. "[E]ven treating as valid the March 5, 2004 denial letter's faulty conclusion that Ms. Gannon was not mentally disabled as of March 2004, it would still be invalid as applied to the period from November 2003 to March 2004…." (AG 00400) The appeal also objected to Aetna's position that Gannon's ability to complete the forms sent to her by Aetna indicated that she was not mentally disabled. The letter also notes that a May 4, 2004 memo given to Gannon in response to her pre-appeal document request says that issues concerning Gannon's mental health "are separately addressed by the psychology consultant," but that no

8

corresponding memo from a psychology consultant had been
provided. (Id.)

By letter dated October 7, 2004 Aetna notified Gannon's
counsel that it required an extension of time until October 27,
2004 to render a decision on her appeal. (See AG 00141-00142.)
The letter notified Gannon that her file was to be reviewed by a
psychiatric consultant who had not yet reviewed her claim and
invited Gannon to submit any additional materials in support of
her appeal.  (See AG 00141-00142.)

By letter dated October 27, 2004, Aetna denied Gannon's
appeal.  (See AG 00219-00223.)  The denial letter cited the
independent review conducted by Aetna's Psychiatric Consultant,
Dr. Mark Schroeder.   The letter quoted Dr. Schroeder's review
as stating "[t]he question to be addressed by this review is
whether the available evidence supports psychiatric restrictions
or limitations as of November 3, 2003." (Id.) Aetna's denial
letter then reported the basis for the denial as being a lack of
evidence that would support restrictions or limitations in four
areas: (1) documentation of severe psychiatric symptoms such as
suicidal or homicidal thoughts; (2) observed or objective
findings of impairment such as marked deficits in organization
of thought, cognitive, or motor function, communication, or
hygiene by detailed mental status exams or psychological
testing; (3) documented presence of significant impairment of

work or non-work related activities; and (4) the provision of intensive mental health treatment. (AG 00221-00222.)

The letter cited Dr. Schroeder's conclusion that evidence of more severe psychiatric symptoms, such as suicidal or homicidal thoughts with intent or plan, psychotic or manic symptoms, or severe panic attacks with agoraphobia were not documented in the claim file. (AG 00221.) Dr. Schroeder cited evidence that some improvement was noted in the July 31 office visit with Dr. Sass, and that the only office visit note after November 3, 2003 was that of November 25, 2003. (Id.) In the last office visit, no severe symptoms were noted and Gannon was described as appearing "dysthymic" which the denial noted "generally indicates less severe depression." (Id.) Dr. Schroeder further noted that an office visit note from the office of Dr. Arthur Hoffman (ophthalmologist) dated November 10, 2003 described Gannon as "on Lexapro with good results" and depression or anxiety were not listed as a diagnosis, although they had been previously. According to the Dr. Schroeder, "this information is inconsistent with the presence of severe depressive symptoms." (Id.)

Dr. Schroeder also reported that there was insufficient evidence of observed or objective findings of impairment by detailed mental status exams or psychological testing. (Id.) Dr. Sass's initial evaluation dated May 22, 2003 was the only

10

detailed mental status exam in the claim file, and the denial letter noted that "this and subsequent descriptions of the employee noted the appearance of emotional distress, but more severe observed findings were not reported." (Id.) Further, poor concentration was noted, but the psychiatric consultant concluded that the severity of this problem and how it was assessed were not reported, and that there was no evidence in the claim file that Dr. Sass performed a detailed cognitive evaluation. (Id.) Finally, no psychological testing was recorded in the claim file. (Id.)

Dr. Schroeder also looked for documented presence of significant impairment of work or non-work-related activities. Dr. Schroeder noted that it was not clear upon what information Dr. Sass based his opinion that Gannon suffered from significant impairments in functional abilities due to depression, beyond Gannon's self-reporting of such difficulties. Dr. Schroeder also cited an October 25, 2003 questionnaire completed by Gannon which reported Gannon performing usual daily activities and recreational activities such as self-esteem workshops, meditation, and yoga and walking for exercise. (AG 00222, AG 00437.) The denial letter acknowledged that the activities do not in themselves establish a full time work capacity, but they "do not suggest severe impairment due to depression." (Id.)

Finally, the psychiatric consultant looked to whether there was evidence of intensive mental health treatment. (Id.) Around November 2003, Gannon was being seen monthly by Dr. Sass and her antidepressant medication had not been changed for about four months. (Id.) There was no indication in the file that Gannon had been seen by a mental health provider since November 25, 2003, nor that she had been referred at any time to a higher level of care such as a Partial Hospital or an Intensive Outpatient Program. (Id.) For these reasons, Dr. Schroeder concluded that the evidence did not support that the employee was being treated for an acute and severe mental disorder as of November 3, 2003. (Id.)

The denial letter cited Dr. Schroeder's conclusion that "the available information does not support the existence of severity of illness or impairment that would prevent the employee from working at own occupation as of November 3, 2003." (Id.) The letter stated that, based on the medical review as well as the technical specialist's review, the clinical data did not support a finding of disability as of November 2003, and Aetna declined to reverse the denial of the claim.  This was Aetna's final decision. (Id.)

On February 16, 2005 Gannon filed this lawsuit pursuant to 29 U.S.C. 1132(a)(1)(B) alleging that she was wrongfully denied long-term disability benefits under the Plan in violation of

502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1). (See Compl. ¶ 21.)
The Complaint sought the long-term disability benefits allegedly
wrongfully withheld since November 2003, pre-judgment interest,
and attorney's fees and costs.  (See Compl. ¶¶ 1, 16-20.)

Aetna filed a motion for summary judgment, arguing that the
administrative record demonstrates that Aetna's decision was not
arbitrary or capricious but rather was based upon a fair review
of all the medical evidence.  Gannon opposed the motion and
filed a Motion for Judgment on the Administrative Record,
arguing that Aetna's denial was inappropriately based upon
Gannon's current status at the time of the denial of benefits
rather than her status as of November 3, 2003 when she became
eligible for long-term disability payments. Gannon also asserted
that her entire record was not reviewed because Dr. Sass's
November 17, 2003 APS was not reviewed by the psychiatrist
retained by Aetna to review the psychiatric record on appeal.


**II.**

There are two preliminary issues that must be resolved
before addressing the merits of the motions: first, the
appropriate characterization of the plaintiff's motion, which
the plaintiff describes as a motion for judgment on the
administrative record; and second, the proper standard of review

to be applied-- de novo review, as urged by the plaintiff, or arbitrary and capricious review as urged by the defendant.

**A.**

Gannon's motion for judgment on the administrative record should be treated as a motion for summary judgment.  The Second Circuit Court of Appeals has noted that a motion for judgment on the administrative record "does not appear to be authorized in the Federal Rules of Civil Procedure" and that "[m]any courts have either explicitly or implicitly treated such motions….as motions for summary judgment under Rule 56." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  While there is some support for the proposition that a motion for judgment on the administrative record should be treated as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), see Rizk v. Long-term Disability Plan of the Dun & Bradstreet Corp., 862 F.Supp. 783, 791 (E.D.N.Y. 1994), the distinction between a motion for judgment on the pleadings and a motion for summary judgment "may be more a matter of form than substance." Id. Substantive ERISA law determines the proper standard of review that the Court should apply in reviewing the decision of the plan administrator, as well as whether the Court can consider materials beyond the administrative record.  See Pava v. Hartford Life and Accident Ins. Co., No. 03-CV-2609,

14

2005 WL 2039192, at *6 (E.D.N.Y. August 24, 2005). As suggested
by the Court of Appeals, summary judgment provides an
appropriate vehicle whereby the Court can apply substantive
ERISA law to the administrative record.

Indeed, most courts that have considered the issue have
analyzed a motion for judgment on the administrative record as a
motion for summary judgment. See Pava, 2005 WL 2039192, at *6;
see also Guglielmi v. Northwestern Mutual Life Ins. Co., No. 06-
CV-3431, 2007 WL 1975480, at *3 (S.D.N.Y. July 6, 2007); Chitou
v. Unum Provident Corp., No. 05-CV-8119, 2007 WL 1988406, at *3
(S.D.N.Y. July 6, 2007); Katzenberg v. First Fortis Life Ins.
Co., No. 05-CV-1146, 2007 WL 1541468, at *14 (E.D.N.Y. May 25,
2007); Charles v. First Unum Life Ins. Co., No. 02-CV-0748E,
2004 WL 963907, at *1 (W.D.N.Y. March 26, 2004). Accordingly,
the plaintiff's motion will be considered as a motion for
summary judgment. Both the plaintiff and Aetna have thus sought
summary judgment in their favor.

**B.**

When an ERISA plan provides an administrator with
discretion to determine benefits, the administrator's
determination of benefits should be upheld unless it was
arbitrary or capricious. Firestone Tire and Rubber C. v. Bruch,
489 U.S. 101, 115 (1989); see also Celardo v. GNY Automobile

15

Dealers Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995); Suozzo v. Bergreen, No. 00-CV-9649, 2003 WL 22387083, at *3 (S.D.N.Y. Oct. 20, 2003). There is no dispute that the Plan contains explicit language conferring discretionary authority on AETNA.[3] (See Takashima Aff, Ex. A 00066.)

An exception to this rule is that a court should review a determination by a plan administrator de novo if the plaintiff can proffer evidence demonstrating that a conflict of interest exists and that it actually influenced the ultimate claim determination. Firestone, 489 U.S. at 115. In Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1256 (2d Cir. 1996), the Court of Appeals for the Second Circuit explained the test as follows:

> [I]n cases where the plan administrator is shown to have a
> conflict of interest, the test for determining whether the
> administrator's interpretation of the plan is arbitrary and
> capricious is as follows: Two inquiries are pertinent.
> First, whether the determination made by the administrator

---

[3] By letter to the Court dated March 31, 2006, the plaintiff argued that an announcement by the New York State Department of Insurance ("DOI") should cause the discretionary clause in the Plan to be given no effect. In Circular Letter No. 8, the Insurance Department announced that it had determined that "discretionary clauses…encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive, or contrary to the law or to the public policy of this state" and directed that discretionary clause provisions in accident and health insurance policies and in subscriber contracts would no longer be approved by the Department. The letter was subsequently withdrawn by the DOI and replaced with Circular Letter No. 14, dated June 29, 2006, which stated that the DOI was in the process of "drafting regulations that would prohibit the use of discretionary clauses in all new and existing accident and health insurance policies, life insurance policies, annuity contracts and subscriber contracts upon renewal, modification, alteration or amendment on or after the effective date of the regulation." These pronouncements have no effect on the Court's analysis. The Department has not yet issued regulations, and Circular Letter No. 14 made clear that the effect of the regulations will be prospective. The Court is governed by the current state of law in the Second Circuit. See Russo v. Continental Casualty Corp., No. 05 Civ. 5700, 2006 WL 931683, at *3 (S.D.N.Y. Apr. 11, 2006), aff'd on other grounds 214 Fed. Appx. 7 (2d Cir. 2007) (recognizing that DOI regulations, if issued, may cause courts to revisit the use of arbitrary and capricious review, but stating that the court was governed by Second Circuit law).

is reasonable, in light of possible competing
interpretations of the plan;  second, whether the evidence
shows that the administrator was in fact influenced by such
conflict.  If the court finds that the administrator was in
fact influenced by the conflict of interest, the deference
otherwise accorded the administrator's decision drops away
and the court interprets the plan de novo.

The plaintiff has the burden of demonstrating the conflict

actually influenced the determination. Sullivan, 82 F.3d at

1259. If the plaintiff shows the conflict, but not the

influence, the conflict remains relevant as "a factor to be

weighed in determining whether there has been an abuse of

discretion." Pulvers v, First UNUM Life Ins. Co., 210 F.3d 89,

92 (2d Cir. 2000)(internal citation and quotation marks

omitted).

Gannon argues that an inherent conflict exists because

Aetna is responsible for adjudicating claims under the subject

plan and Aetna is the Plan's underwriter. (See Takashima Aff.,

Ex. A at AG 00011.) The plaintiff also argues that the conflict

actually influenced the determination because Aetna failed to

render an initial decision on Gannon's disability claim within

the deadlines established by the Department of Labor, and

because Aetna disregarded Dr. Sass's report dated November 17,

2003, which the plaintiff claims is a "critical piece of

evidence submitted" in support of Gannon's claim. While not

disputing that Aetna operates as a claim administrator with an

inherent conflict, the defendant responds that both contentions

17

are without merit and that the plaintiff cannot meet its burden
of showing that the conflict actually influenced the
determination of Gannon's claim.

The plaintiff has failed to raise a material issue that
Aetna's determination was actually influenced by the conflict.
First, Gannon's reliance on the delay in deciding does not
support any finding that the conflict affected the determination
of her claim.

The Department of Labor ("DOL") guidelines require the claim
fiduciary to notify the claimant of an initial adverse
determination of a disability claim within 45 days from when the
claimant files her claim. See 29 C.F.R. § 2560.503-1(f)(3).
This period may be extended by the plan for up to thirty days,
provided the plan administrator determines such an extension is
necessary due to matters beyond the control of the plan and
notifies the claimant, prior to the expiration of the forty-five
-day period, of the circumstances requiring the extension of
time and the date by which the plan expects to render a
decision. An additional thirty-day extension is allowed under
similar circumstances, bringing the total time allowed, if the
fiduciary notifies the claimant properly and the circumstances
are beyond the control of the fiduciary, to 105 days. Id.

Gannon actually submitted her claim on November 17, 2003 (AG
00428-00458). The claim was ultimately determined on March 5,

18

2004.  Aetna advised Gannon by telephone on December 3, 2003,
Dec. 18, 2003, Jan. 12, 2004, and Jan. 22, 2004 that it was
waiting for medical records from her treating providers to
evaluate her disability claim. (See AG 00762, 00761, 00758,
00757.) The regulations provide for tolling where the claimant
fails to submit information necessary to decide the claim.  The
plaintiff argues that her doctors failed to submit the
information, not her, but the regulations do not distinguish the
claimant from her doctors. See 29 C.F.R. § 2560.503-1(f)(4).

   The defendant's actions satisfy the requirements under the
regulations.  The plaintiff argues that the defendant never gave
notice of the extension before the expiration of the current
deadline period. See 29 C.F.R. §2560.503-1(f)(3). But Aetna's
letters and phone calls notifying her appear to satisfy the
notice requirements under the regulations. In any event, Gannon
fails to offer an explanation of why the alleged lateness of the
decision demonstrates that an actual conflict operated in the
decision making process, particularly in light of Aetna's
repeated attempts to get more information regarding her
disabilities. The plaintiff is required to do more than make
conclusory statements that the decision to deny the benefits was
affected by a conflict of interest—she actually must show how
the conflict affected the reasonableness of the plan

administrator's decision. See, e.g. Bjork v. Eastman Kodak Co., 189 F.Supp.2d 3, 13 (W.D.N.Y. 2001).

Gannon also attempts to show that Aetna's conflict influenced the claim decision by arguing that Aetna failed to review Dr. Sass's APS dated November 17, 2003. Gannon points out that the APS does not appear on the inventory of records claimed to have been reviewed by Dr. Schroeder (AG 00255-256), nor the list of documents purported to be reviewed by Aetna in conjunction with Gannon's appeal (AG 00219). Aetna contends that all of Gannon's medical records were reviewed in connection with Gannon's long-term disability claim, and Aetna points out that the November 17, 2003 APS was an attachment to the appeal letter filed by the plaintiff's counsel and that letter was in fact listed as a document submitted in connection with the appeal. (AG 00255.)

Gannon has failed to show how Aetna's alleged failure to review the November 17, 2003 APS on appeal demonstrates that the administrator's decision was affected by the conflict. Not only does the plaintiff overstate the materiality of the November 17, 2003 APS, as discussed below, but the plaintiff fails to link the alleged omission with Aetna's conflict of interest. Conclusory statements will not suffice to show actual influence. See Guglielmi v. Northwestern Mutual Life Ins. Co., No. 06-CV-3431, 2007 WL 1975480, at *5 (S.D.N.Y. July 6, 2007); see also Bjork, 189 F.Supp.2d at 13 ("Other than conclusory statements

that the decision to deny plaintiff's benefits was tainted by an inherent conflict of interest, plaintiff does not adduce any facts or evidence tending to establish the existence of a conflict or how a conflict, if it existed, affected the reasonableness of the plan administrator's decision."). Because the plaintiff has not offered evidence to demonstrate the conflict actually influenced the claim determination, the arbitrary and capricious standard is appropriate to review the determination of the plaintiff's claim for long-term disability benefits.

### C.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994). The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial.  See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat. Bd. Of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

### III.

Under the arbitrary and capricious standard, the court cannot question the plan administrator's decision except in the case of a "clear error of judgment." Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798 of the Alliance of Theatrical Stage Employees, 170 F.3d 162, 166 (2d Cir.1999)(citing Zuckerbrod v. Phoenix Mutual Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996)); see also Thompson v. General Elec. Co., No. 01-CV-4438, 2002 WL 482862, at *3 (S.D.N.Y. March 29, 2002).  The decision to deny benefits "may be overturned only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999)(quoting Pagan, 52 F.3d at 442). Substantial evidence is "such evidence

that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and]… requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995)(quoting Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)). "The arbitrary and capricious standard of review is highly deferential to a plan administrator. 'The question before a reviewing court to this standard is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Jordan v. Retirement Committee of Renssale Polytechnic Institute, 46 F.3d 1264, 1271 (2d Cir. 1995) (quoting Bowman Transp., Inc. v. Arkansas Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (internal quotation marks omitted).

Under the arbitrary and capricious standard of review, the Court is limited to the administrative record. Miller, 72 F.3d at 1071 ("[A] district court's review under the arbitrary and capricious standard is limited to the administrative record.").[4]

---

[4] Although the defendant argued at oral argument that courts can never consider extrinsic evidence when reviewing an administrator's decision under the arbitrary and capricious standard, Miller itself did consider deposition testimony to determine whether the decision-making process was arbitrary and capricious. Miller, 72 F.3d at 1072. See also Lee v. Aetna Life Ins. Co., No. 05-CV-2960, 2007 WL 1541009, at *4 (S.D.N.Y. 2007) (noting court's reliance on deposition testimony); Black v. Bowes, No. 05-CV-108, 2006 WL 3771097, at *6 (S.D.N.Y. Dec. 21, 2006) ("The conclusion that must be drawn from Miller is that in order to determine what evidence the fiduciaries considered in reaching their decision, it may be necessary to consider evidence beyond the actual documents that the administrators reviewed."). Notwithstanding this possible exception, the Court's review in this matter should be limited to the administrative record. The only addition to the administrative record that the plaintiff asks the Court to consider is an affidavit from Dr. Sass. That affidavit does not explain the administrative record that was under review and should not be considered. In any event, it does not charge the decision.

Gannon argues that, even under the arbitrary and capricious standard of review, she is entitled to judgment vacating Aetna's denial of benefits. She advances several arguments: first, that Aetna inappropriately focused on a perceived lack of current records instead of reviewing her claim as of the date she first became eligible, November 3, 2003, and moreover, that this error was compounded by Aetna's failure to consider her claim in a timely manner in violation of ERISA deadlines. She also argues that Aetna's decision on her appeal was erroneous because Aetna failed to consider Dr. Sass's November 17, 2003 APS and because Aetna wrongfully based its decision on Gannon's "ability to communicate effectively in a written format" as proof that her anxiety and depression were not disabling. (See AG 00326.) According to Gannon, these errors show that the decision was arbitrary and capricious.

Aetna asserts that Gannon is manufacturing the appearance of a procedural irregularity by construing the word "current" far too literally, and that Aetna timely reviewed her appeal. Aetna also argues that all of Dr. Sass' progress notes and attending physician statements, as well as all the claim and medical documentation contained in the record were evaluated by Aetna on the appeal.

On its own motion for summary judgment, the defendant asserts that, upon a review of all the available medical records

24

and evidence, Gannon's claim for total disability was denied
because there was a lack of medical evidence to demonstrate that
Gannon's depressive disorder prevented her from returning to
work.

Under the arbitrary and capricious standard, the inquiry is
whether Aetna's final decision that the plaintiff failed to
demonstrate that her depressive disorder prevented her from
returning to work was based on substantial evidence. Gannon, as
the claimant, had the burden to prove that her disability
prevented her from returning to work. See Juliano v. Health
Maintenance Org. of New Jersey, 221 F.3d 279, 287-88 (2d Cir.
2000).

## A.

Gannon argues that Aetna's March 5, 2004 denial letter
improperly focused on a perceived lack of current records
concerning Gannon's mental health treatment and condition,
instead of looking at her mental condition as of November 3,
2003, the date she first became eligible for long-term
disability benefits. Aetna stated in its initial denial letter
that there is "no indication in the records received that
[Gannon is] currently receiving any mental health treatment" and
that "no current mental health date [sic] is available to
evaluate." (See AG 00326.) The plaintiff asserts that because

25

there was evidence in the record to demonstrate that she was receiving mental health treatment as late as November 25, 2003, the disability claim should not have been denied if it was properly evaluated, and her subsequent lack of treatment should only be relevant to an evaluation of her continuing eligibility. She adds that the delay in processing her application contributed to this faulty focus because there was a lengthy gap between her eligibility date when she was receiving treatment and the date her claim was denied.

However, the issue in this case is whether Aetna's decision on appeal issued on October 27, 2004, was arbitrary or capricious. The plaintiff concedes that it is the final decision on appeal that must be evaluated. (Tr. at 6.) While the March 5, 2003 denial letter did contain language referring to current records, the plaintiff appealed that determination and specifically complained about Aetna's alleged failure to assess her mental condition as of November 3, 2003. Aetna's final decision on appeal clearly centered on Gannon's long-term disability benefit eligibility as of November 3, 2003. The final decision explicitly quoted from Dr. Schroeder's review which stated that: "The question to be addressed by this review is whether the available evidence supports psychiatric restrictions or limitations as of November 3, 2003." (AG 00221.) Dr. Schroeder's report noted that Gannon had not received a detailed

26

mental status examination by Dr. Sass since May 22, 2003 (AG 00221) and that "this and subsequent descriptions of the employee noted the appearance of emotional distress, but more severe observed findings were not reported." (Id.) The report referenced the October 25, 2003 questionnaire completed by Gannon which reported an ability to engage in certain daily activities, and concluded that such activities "do not suggest severe impairment due to depression." (Id.) The report also explicitly noted that the patient was being seen monthly by Dr. Sass around November 2003 and that her antidepressant medication had not been changed for about four months. The decision also quoted Dr. Schroeder's conclusion that "the available information does not support the existence of severity of illness or impairment that would prevent the employee from working at own occupation as of November 3, 2003." (Id.)

Therefore, the administrative appeal decision clearly did not demand that the plaintiff make a showing of disability beyond the time she first became eligible. It focused on the appropriate date, namely disability as of November 3, 2003.[5]

**B.**

---

[5] For the reasons explained above, Aetna did not violate ERISA regulations by the timing of its initial decision and the timing did not prejudice the plaintiff because the appellate decision appropriately focused on whether the plaintiff was disabled as of November 3, 2003.

Gannon also asserts that Dr. Schroeder did not consider Dr. Sass's November 17, 2003 APS and that the alleged disregard of this evidence should result in summary judgment for the plaintiff. Gannon points out that the document does not specifically appear on the list of documents Aetna claims to have received in conjunction with the appeal (See AG 00219) and the list of documents Dr. Schroeder cited in his review (See AG 00255-00257). Aetna claims that its denial of the plaintiff's claim was based on a review of all of her medical and claim records.

However, the evidence supports the conclusion that Dr. Schroeder did review the November 17, 2003 APS. While both documents that Gannon cites to refer only to the August 20, 2003 APS, Gannon attached the November 17, 2003 APS to her appeal letter dated August 23, 2004. Aetna's Clinical Referral/Review completed by Clare Cody lists the four page letter from the claimant's attorney dated August 23, 2004 as part of the information received for the purpose of the administrative review of Aetna's previous determination. (See AG 00255.) The October 27, 2004 denial of the appeal also specifically listed the August 23, 2004 letter. (AG 00219.) Simply because the November 17, 2003 APS is not explicitly cited in Dr. Schroeder's report does not amount to a showing that it was not reviewed.

In any event, if the November 17, 2003 APS was not reviewed by Dr. Schroeder, the omission is not material. The document did not contain information that was different from the other evidence which was indisputably reviewed by Aetna. Dr. Schroeder was aware that Gannon was receiving treatment for depression from Dr. Sass as of November 3, 2003.  Dr. Schroeder's written review reflects that he reviewed Dr. Sass's office notes dated May 22, 2003 through November 25, 2003 and all of the other clinical and medical information that submitted in support of the appeal. (See AG 00255-00257.) Dr. Sass's office visit notes for Gannon including Dr. Sass's medical status examination of the plaintiff on May 22, 2003 dated Nov. 25, 2003 are specifically referenced in Dr. Schroeder's review (AG 00256-00257) and in Aetna's letter dated October 27, 2004, upholding its denial of Gannon's long-term disability claim (AG 00221). Even with this information, Dr. Schroeder determined that there was not enough evidence showing that Gannon satisfied the definition for disability so that she qualified to receive long-term disability benefits beginning on November 3, 2003.

The November 17, 2003 APS did not materially change the other information before Dr. Schroeder. The November 17, 2003 APS was substantially duplicative of the August 20, 2003 APS and contained similar findings. Dr. Sass concluded that the plaintiff's condition was "unchanged" and estimated that the

29

plaintiff could return to work in another month, on December 18, 2003. Both statements diagnosed Gannon with major depressive episode disorder.  The August 20, 2003 APS lists "marked tearfulness, depressed mood, anxiety, poor concentration and irritability on mental status exam" as "objective findings that substantiate impairment".  The November 17, 2003 APS lists "significant depression with anxiety on mental status," under "objective findings."  Dr. Sass identifies the same activities as ones that Gannon is unable to perform in both APSs, but does not identify in either report on what he bases this conclusion. (See AG 00403; AG 00406.) In his report, Dr. Schroeder found that the only more detailed mental status exam was in the initial evaluation by Dr. Sass on May 20, 2003 and that Dr. Sass did not provide a detailed description of the employee's daily activities or indicate how the reported impairments affected those activities. There was nothing in the November 17, 2003 that cured those deficiencies.

The failure to rely on evidence that does not materially change the other evidence before a plan administrator is not a basis for overturning a decision of a plan administrator under the arbitrary and capricious standard. Even the existence of conflicting evidence in the record would not by itself indicate that the decision of the plan administrator was arbitrary or capricious.  Rosario v. Local 32B-32J, No. Civ. 7557, 2001 WL

930234, at *4 (S.D.N.Y. Aug. 16, 2001)(citing <u>Wojciechowski v. Metropolitan Life Ins. Co.</u>, 75 F.Supp.2d 256, 262 (S.D.N.Y. 1999)).

This is not a case like <u>Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry</u>, No. 00-CV-2013, 2004 WL 2851792 (E.D.N.Y. Dec. 8, 2004).  In <u>Neely</u>, the court found the claim administrator's determination was arbitrary and capricious in part because the Pension Committee failed to consider several pieces of evidence relevant to the plaintiff's claim for long-term disability benefits, including three piece of evidence crucial to an earlier determination that the plaintiff was entitled to disability benefits.  In <u>Neely</u>, the court considered the remainder of the evidence that the claim administrator relied upon and found that it was inadequate to support its denial of the plaintiff's long-term disability benefits.  <u>Id</u>. at *11-12. Here, the remainder of the evidence supports the administrator's finding that Gannon failed to demonstrate her inability to return to work.

### C.

The appeal record reflects that Aetna's determination was based on a thorough review of the record.  Aetna reviewed Gannon's record during the initial evaluation of her claim and during her administrative appeal, and determined that there was

a lack of medical evidence demonstrating that her depressive disorder prevented her from returning to work.

Gannon was required to prove that her disability prevented her from returning to work.  See Juliano, 221 F.3d at 287-88. Aetna was not required to employ a physician to conduct an independent psychiatric examination of the plaintiff, although it had the right to do so. (Takashima Aff., Ex. A at AG 00022.) It did employ a psychiatric consultant who reviewed all the progress notes from the plaintiff's treating psychiatrist and who concluded that the evidence was insufficient to support a finding of disability and who provided a detailed explanation why he found that the evidence did not support a finding of disability. Aetna was not required to defer to the opinion of the plaintiff's psychiatrist. See Black & Decker v. Nord, 538 U.S. 822, 834 (2003) (plan administrators are not required to "accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.")[6]

---

[6] At oral argument, the plaintiff cited to two unpublished decisions which hold that it is arbitrary and capricious in the context of a psychiatric disability diagnosis to rely on the opinion of a non-treating doctor "because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." Morse v. Corning Inc. Pension Plan for Hourly Employees, No. 05-CV-6318, 2007 WL 610628, at *9 (W.D.N.Y. Feb. 23, 2007) (citing Westphal v. Eastman Kodak Co., No. 05-CV-6120, 2006 WL 1720380 (W.D.N.Y. Jun. 21, 2006)).  The categorical rules in those cases appear to be inconsistent with the rejection of the "treating physician rule" in Black & Decker, and with the Supreme Court's citation with apparent approval of the Department

Aetna's determination that Dr. Sass's findings were insufficient to demonstrate an inability to return to work were not arbitrary and capricious.  Aetna's Psychiatric Consultant, Dr. Schroeder, thoroughly reviewed Gannon's record. (AG 00256-00257.) His analysis lists the evidence in the record that he relied upon to conclude the record "does not support that the employee was being treated for an acute and severe mental disorder as of 11-3-03." (Id.) The report also concludes that there was no detailed explanation of how the plaintiff's condition affected her daily activities.  The report ultimately found that there was insufficient evidence of an illness or impairment that would prevent the plaintiff from working at her occupation as of November 3, 2003. (AG 00257.) Aetna, having reviewed the record, accepted that conclusion.  The report reasonably concludes that the evidence in the record does not demonstrate severe impairment due to depression based upon the lack of objective findings of Dr. Sass. Given the deferential standard that this Court must apply and based upon the administrative record, Aetna's determination that Gannon was not disabled within the meaning of the Plan was based upon substantial evidence and was not arbitrary and capricious. See,

---

of Labor's view that ERISA is best served by, "preserv[ing] the greatest flexibility for…operating claims processing systems consistent with the prudent administration of a plan." Black & Decker, 538 U.S. at 832 (internal citation and quotation marks omitted).  In any event, the facts in both Westphal and Morse differ substantially from the facts in this case.  The severity of the psychiatric diagnoses in both cases was greater and the extent of the medical evidence from treating physicians was more substantial than the evidence submitted by Gannon in this case.

e.g. Kletcher v. Metropolitan Life Ins. Co., No. 01-CV-6566,

2005 WL 1337509 (S.D.N.Y. June 6, 2005); Lekperic v. Building

Service 32B-J Health Fund, No. 02-CV-5726 (E.D.N.Y. July 23,

2004). Therefore, Aetna's motion for summary judgment should be

**granted**. The plaintiff's motion for judgment on the

administrative record is **denied**.

#### IV.

The court has carefully considered the remainder of the

arguments and found them to be either moot or without merit.

For the reasons stated above, the defendant's motion for summary

judgment (Docket No. 14) is **granted**. The plaintiff's motion for

judgment on the administrative record (Docket No. 21) is **denied**.

The clerk is directed to enter judgment dismissing the complaint

and closing this case.

**SO ORDERED.**

Dated:     **New York, New York**
           **September 27, 2007**

John G. Koeltl
United States District Judge

34